# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FINANCIAL SOFTWARE SYSTEMS, INC., | : : | |
| *Plaintiff*, | : : | CIVIL ACTION |
| v. | : : | |
| QUESTRADE, INC., | : | No. 18-742 |
| *Defendant*. | : | |

## MEMORANDUM

PRATTER, J.                                                                                                                                              JUNE 27, 2018

### INTRODUCTION

Two sophisticated commercial entities are embroiled in a breach of contract and unjust enrichment dispute. The plaintiff, Financial Software Systems, is a Pennsylvania company that develops and licenses financial risk-management software. The defendant, Questrade, a Canadian brokerage firm, provides an online trading platform for investors.

In 2011, Financial agreed to provide software services for Questrade's trading platform over a five-year period. After Questrade refused to pay invoices in 2016, Financial brought an action in state court for breach of contract. Questrade removed the case to this Court and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). The gist of Questrade's motion is it lacks sufficient contacts with Pennsylvania to be subject to the specific personal jurisdiction of a Pennsylvania-based court.

Because Questrade assumed long-term obligations to a Pennsylvania corporation, which included repeated communications and payments into Pennsylvania, this Court has personal jurisdiction over Questrade. Questrade's motion to dismiss is denied.

1

## BACKGROUND

### I. The Parties

Plaintiff Financial Software Systems is a Pennsylvania corporation that developed Spectrum Systems ("Spectrum") risk-management software that facilitates online trading in foreign currency. Resp. Oppo. Mot. Dismiss, Ex. 1, Decl. ¶¶ 3, 5. Financial's website states that its headquarters are in Pennsylvania, with sales and support offices worldwide.

Defendant Questrade is an online trading platform based in Ontario, Canada. It does not market to U.S. customers, owns no real property in Pennsylvania, does not pay taxes in Pennsylvania, and is not registered with the Pennsylvania Department of State.

### II. Questrade's Contacts — or Lack Thereof — with Pennsylvania

Analytically, the facts relating to Questrade's contacts with Pennsylvania fall into three buckets: (1) the facts surrounding the parties' initial negotiations (contract formation), (2) the substance of the contract (contract terms), and (3) the parties' conduct during the life of the contract (contract performance).

#### A. Contract Formation

In 2011, Questrade searched online for vendors that could help facilitate its customers' ability to trade in the foreign exchange market. Mot. Dismiss, Ex. B ¶¶ 13–14.[1] After consulting the marketing materials of a "short list" of vendors, Questrade sought five proposals and received three responses, including one from Financial. *Id.* ¶¶ 15–19.

Financial prepared and submitted its initial proposal in Pennsylvania. In the ensuing negotiations, Questrade sent multiple emails and made numerous phone calls to Financial's

---

[1] On a motion pursuant to Rule 12(b)(2), the Court may rely on evidentiary material outside the scope of the complaint. "[O]nce a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

headquarters in Pennsylvania. Resp. Oppo. Mot. Dismiss, Ex. 1, Decl. ¶¶ 7–8. But Questrade officials never physically visited Financial's Pennsylvania location. Mot. Dismiss, Ex. B ¶ 22. Financial representatives, on the other hand, visited Toronto for in-person meetings with Questrade twice in mid-2011. *Id*. ¶¶ 21, 24.

### B. Contract Terms

In August 2011, negotiations between Questrade and Financial culminated in an agreement for a five-year term. Mot. Dismiss, Ex. E ¶ 6. Of particular importance here, Financial agreed to provide services, such as trainings, which were to be performed remotely (from any of Financial's support locations, including those in Pennsylvania) or at Questrade's Toronto offices. *Id.* ¶ 9.

The agreement also imposed limits on Questrade's use of Financial's Spectrum software. For example, Questrade personnel were permitted to access Spectrum "only . . . from Questrade's offices in Canada." Mot. Dismiss, Ex. E ¶ 7(a).

Finally, the agreement stated that it would be governed by New York law. Mot. Dismiss, Ex. D ¶ 19(c). It did not contain a forum-selection clause but specified that notices to Financial must be sent to Financial's headquarters in Horsham, Pennsylvania. *Id.* ¶ 17.

### C. Contract Performance

The first four years of the agreement, from 2011 to 2015, proceeded smoothly. During this period, Financial employees in Pennsylvania fielded requests for support over the phone and online. Resp. Oppo. Mot. Dismiss, Ex. 1, Decl. ¶¶ 11–12. Virtually all of the support from Financial to Questrade came from Financial's headquarters in Horsham, Pennsylvania. *Id.* ¶ 15. Additionally, Questrade made several payments to Financial that were handled by Financial's accounts office based in Pennsylvania. *Id.* ¶ 10.

### III. Payment Dispute Leading to this Lawsuit

In late 2015, Questrade contacted Financial in Horsham seeking to modify the termination provisions of the agreement, but Financial rejected the outreach. Compl. ¶ 11. In early 2016, Financial issued invoices totaling over $160,000, which Questrade has refused to pay. Resp. Oppo. Mot. Dismiss, Ex. 1, Decl. ¶¶ 18–21; Resp. Oppo. Mot. Dismiss, Ex. 3.

In August 2017, Financial brought claims for breach of contract and unjust enrichment against Questrade in the Montgomery County Court of Common Pleas. Compl. ¶¶ 18–25. In February 2018, Questrade removed the case to this Court and moved to dismiss the case for lack of personal jurisdiction. The Court heard oral argument.

### STANDARD OF REVIEW

In deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true. *Stann v. Olander Prop. Mgmt. Co.*, No. 11-CV-7865, 2014 WL 3628588, at *2 (E.D. Pa. July 23, 2014). However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). The plaintiff must establish those contacts with reasonable particularity. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1996). Once the plaintiff makes out a *prima facie* case in support of personal jurisdiction, the burden shifts to the defendant to establish that some other considerations exist which would render exercise of personal jurisdiction unreasonable. *Stann*, 2014 WL 3628588, at *2 (citing *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992)).

## DISCUSSION

Because Questrade assumed long-term obligations to a Pennsylvania-based company and made repeated communications and payments into Pennsylvania, this Court has personal jurisdiction over Questrade.

Federal courts have personal jurisdiction over nonresident defendants to the extent permissible under the law of the state in which the court sits. *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990). Pennsylvania law, in turn, authorizes courts to exercise personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States." *Streamline Bus. Servs., LLC v. Vidible, Inc.*, No. 14-CV-1433, 2014 WL 4209550, at *4 (E.D. Pa. Aug. 26, 2014) (quoting 42 Pa. C.S. § 5322(b)). Turning to the Constitution, then, the Due Process Clause requires that the defendant have "minimum contacts" with the forum, meaning that subjecting the defendant to trial in the forum comports with "traditional notions of fair play and substantial justice." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Under this constitutional framework, personal jurisdiction comes in two forms: general jurisdiction or specific jurisdiction. *Id.* Both sides agree that this Court does not have general jurisdiction over Questrade. Accordingly, this Memorandum addresses only the legal principles concerning specific personal jurisdiction.

Specific jurisdiction exists when the defendant's conduct that gives rise to the cause of action "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). For specific jurisdiction to exist, three requirements must be met: (1) the defendant must "purposefully direct[] [its] activities" at the forum state, (2) the litigation must "arise out of or relate to" at least one of the defendant's activities in the forum state, and (3) the exercise of jurisdiction must comport with traditional notions of "fair play and substantial

justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

This section analyzes the three requirements in turn. First, Questrade purposefully directed its activities at Pennsylvania by repeated communications with Financial before and during the life of a long-term contract. Second, given that litigation would not have occurred without Questrade reaching out to a Pennsylvania-based company, this case "arose out of" Questrade's activities in Pennsylvania. Third, Pennsylvania's interest in redressing Financial's alleged injury and the ease with which Questrade can travel to Pennsylvania both demonstrate that the exercise of jurisdiction comports with traditional notions of fair play.

**I.      Requirement One:  Questrade purposefully directed its activities at Pennsylvania.**

The first requirement of specific personal jurisdiction — that the defendant "purposefully directed its activities" at the forum state — does the lion's share of the work. Here, Questrade purposefully directed its activities at Pennsylvania in at least four ways: Questrade's initiation of negotiations with Financial, the long-term nature of its contract with Financial, Questrade's consistent, repeated communications to Financial's headquarters in Pennsylvania, and Questrade's payments to Financial in Pennsylvania during the life of the contract.

Although contracts can provide the basis for the proper exercise of personal jurisdiction, the existence of a contract alone does not automatically establish minimum contacts. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Still, contract negotiations, including communications by the defendant into the forum state, may count toward the minimum contacts needed to support personal jurisdiction. *Id*. Courts consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, the

contemplated future consequences, and the parties' actual course of dealing. *Remick*, 238 F.3d at 256; *Mellon Bank*, 960 F.2d at 1223.

Questrade's contacts with Pennsylvania are considered in the three segments outlined above: contract formation, contract terms, and contract performance. First, during contract formation, Questrade initially reached out to Financial in Pennsylvania and continued to send communications into Pennsylvania to cultivate the business relationship. Second, the contract's terms — specifically, the five-year duration of the agreement and the notice provision — demonstrate that Questrade contemplated sustained future consequences in Pennsylvania. Finally, during the contract's performance, Questrade solidified its contacts with Pennsylvania by sending payments and utilizing Financial's customer services in Pennsylvania.

### A. Contract Formation: Questrade purposefully directed its activities at Pennsylvania by initiating contact and consistently communicating with Financial.

At the contract formation stage, two circumstances demonstrate that Questrade purposefully directed its activities at Pennsylvania: Questrade initiated negotiations with Financial and sent consistent communications to Financial's headquarters in Pennsylvania. Questrade's lack of physical presence in Pennsylvania does not undercut a finding of purposeful direction.

**1. Questrade initiated negotiations with Financial.** Out of every possible financial software firm, Questrade asked Financial for a sales presentation, and it was not until Questrade acted that the two parties engaged in one-on-one discussions. Although this sort of initial solicitation is not determinative, *see Carteret*, 954 F.2d at 150, it does support a finding of "purposeful direction" at the contract formation stage, *see Vetrotex CertainTeed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152–53 (3d Cir. 1996). Indeed, for these purposes, solicitation does not take much. For instance, the *Remick* court found personal jurisdiction when

a client sought out an attorney by calling the attorney's Philadelphia office. *Remick*, 238 F.3d at 256. And in *Vetrotex*, the Third Circuit Court of Appeals found no personal jurisdiction existed over a defendant by distinguishing a case of initial solicitation like Questrade's: "[*Vetrotex* was] not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract." *Vetrotex*, 75 F.3d at 152.

Moreover, after evaluating pitches from several firms, Questrade chose Financial. A defendant purposely avails itself of the privilege of conducting business in the forum when a defendant is aware of plaintiff's affiliation with the forum and chooses to engage with the plaintiff. *Mellon Bank*, 960 F.2d at 1223. In *Mellon Bank*, for instance, the Third Circuit Court of Appeals found that a defendant's choice to do business with a Pennsylvania bank instead of banks elsewhere meant that the defendant knew that it was directing its activities at Pennsylvania. *Id.* Questrade similarly solicited proposals from multiple vendors and chose one whose website indicated that it was headquartered in Pennsylvania, namely, Financial.

**2. Questrade sent consistent communications to Financial's headquarters in Pennsylvania**. "In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). In one case from this district, a California defendant initiated contact and then continued to communicate at frequent intervals over the phone with its Pennsylvania counterpart. The court held that the defendant should have known that its conduct would have an economic impact in Pennsylvania. *Mickleburgh Mach. Co. v. Pacific Econ. Dev. Co.*, 738 F. Supp. 159, 162, (E.D. Pa. 1990). To take another example, the court found that nonresident defendants' initial communication over mail and phone bolstered a finding that the defendants purposefully directed their activities at Pennsylvania. *Elbeco Inc. v.*

8

*Estrella de Plato, Corp.*, 989 F. Supp. 669, 675 (E.D. Pa. 1997); *see also Guzzi v. Morano*, No. 10-CV-1112, 2011 WL 4631927, at *6 (E.D. Pa. Oct. 6, 2011) (finding that communicating at frequent intervals over the telephone after initiating contact supported a finding of personal jurisdiction); *Grand Entm't Grp.*, 988 F.2d at 482 (holding, in a suit for breach of contract, that the court had personal jurisdiction over defendants that had not physically entered the forum but had initiated twenty telephone calls with the plaintiffs in the forum); *Leone v. Cataldo*, 574 F. Supp. 2d 471, 479 (E.D. Pa. 2008) (finding personal jurisdiction based on repeated telephone contacts to the forum and not solely based on a physical visit to the forum).

By communicating with Financial on numerous occasions through telephone calls, Questrade demonstrated a strong, purposeful level of contact with Pennsylvania throughout the contract-formation stage. *Cf. Element Fin. Corp. v. ComQi, Inc.*, 52 F. Supp. 3d 739, 747 (E.D. Pa. 2014) (finding no personal jurisdiction when the parties did not engage in "extended or protracted contract negotiations or post-contract discussion").

**3. Questrade's lack of physical presence in Pennsylvania does not change the calculus.** Courts have increasingly acknowledged that in today's world of enhanced technology, physical presence in the forum state is not required for personal jurisdiction to attach. *See, e.g.*, *Burger King*, 471 U.S. at 476. "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). This is because "[i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines thus obviating the need for physical presence within a State in which business is conducted." *Burger King,* 471 U.S. at 476; *cf. Microsoft Corp. v. United States*, 130 HARV. L.

9

REV. 769, 769 (2016) ("Increasingly, courts must apply old laws to new technology. In doing so, they can either acknowledge the unique features of modern technology, or . . . they can disregard these differences. Only the first approach allows courts to grapple with the legal issues generated when old law meets new tech.").

In *Burger King*, for instance, the defendant had no physical ties to Florida but was still subject to the personal jurisdiction of Florida courts because it had reached into Florida to create a long-term relationship. *Burger King*, 471 U.S. at 479–80. Similarly, Questrade's lack of physical presence in Pennsylvania does not change the conclusion that it purposefully directed its activities at Pennsylvania because Questrade reached out to Financial to initiate the contract.

### B. Contract Terms: Questrade purposefully directed its activities at Pennsylvania by entering into a long-term contract with Financial.

Three provisions of the contract between Financial and Questrade bear on Questrade's contacts with Pennsylvania: (1) the contract was to last for five years, (2) it required notices to be sent to Financial in Pennsylvania, (3) it limited Questrade's use of Financial's technology to outside the U.S. market, and (4) it was governed by New York law. Taking each provision in turn demonstrates that because the first two provisions outweigh the latter two, Questrade purposefully directed its activities at Pennsylvania.

**1. The long-term nature of the contract demonstrates Questrade's contacts with Pennsylvania.** The longer the duration of a contract, the more likely that a party is subject to the personal jurisdiction of its counterparty's forum state. In general, an agreement will support a finding of personal jurisdiction when its terms commit the parties to a relationship longer than a year. *E.g.*, *Streamline Bus. Servs. LLC*, 2014 WL 4209550, at *10; *see also Element Fin. Corp.*, 52 F. Supp. 3d at 747 (finding no personal jurisdiction when a contract that required monthly

lease payments demonstrated "no manifest intent by the parties to enter into a long-term business relationship").

Here, Questrade was engaged in business with Financial for the long run. Questrade knew that it was going to have obligations and contacts in Pennsylvania for at least five years under the terms of the contract. *Cf. Burger King*, 471 U.S. at 480 (20-year franchise agreement supported personal jurisdiction); *Streamline Bus. Servs. LLC*, 2014 WL 4209550, at *10 (same for five-year contract); *Guzzi* 2011 WL 4631927, at *6–7 (same for two-year employment contract); *Cohen, Seglias, Greenhall, Pallas, & Furman, P.C. v. Hessert Constr. PA, LLC*, 2011 WL 382571, *7 (E.D. Pa. Feb. 4, 2011) (finding personal jurisdiction where defendants solicited and initiated a business relationship with a Pennsylvania entity that lasted ten years).

**2. The contract's notice provision requiring that notices be sent to Financial's offices in Pennsylvania further demonstrates Questrade's contact with Pennsylvania.** When an agreement acknowledges the location of an organization and requires that notices be mailed to the organization's forum state, courts are more likely to conclude that personal jurisdiction exists over the out-of-state party. *See, e.g.*, *Burger King*, 471 U.S. at 480 (finding personal jurisdiction over out-of-state defendant when governing contracts called for defendant to forward all notices to plaintiff in forum state); *see also Mellon Bank*, 960 F.2d at 1223 (agreements noting that the plaintiff was located in Pennsylvania supporting a finding that defendants knew they were reaching into Pennsylvania). Here, the agreement between Financial and Questrade specifies that notices to Financial must be sent to Financial's headquarters in Horsham, Pennsylvania. *See* Mot. Dismiss, Ex. D ¶ 17. This contractual term further demonstrates that Questrade purposefully directed its activities at Pennsylvania.

**3. The contract's geographic limit of Questrade's use of Spectrum in Canada does not defeat personal jurisdiction.** The agreement prevented Questrade from using the Spectrum software outside of Canada. But the Supreme Court in *Burger King* deemphasized a similar geographic limitation for purposes of evaluating a personal jurisdiction challenge. There, the Court stressed the length of the agreement in holding that Florida had jurisdiction over an out-of-state defendant in a dispute over a contract that limited the franchisee to operating restaurants in Michigan. *Burger King*, 471 U.S. 462 at 479–80.

**4. The fact that New York law governs the contract does not move the needle on personal jurisdiction in Pennsylvania.** Questrade argues that the choice of New York law shows that Questrade did not avail itself of the benefit of Pennsylvania law. But the state law governing a contract cannot be sufficient to confer or deny jurisdiction. *Burger King*, 471 U.S. at 482. Instead, the law governing an agreement should be considered in light of the length of the contractual relationship. *Id.*

To be sure, the Third Circuit Court of Appeals in *Remick* used a clause mentioning Pennsylvania law to bolster its conclusion that the defendant had purposefully directed itself at Pennsylvania. *See Remick*, 238 F.3d at 256. But Questrade has not cited any case for the converse proposition that it advances here: that a clause stating that one forum's law will apply operates to strip another forum of specific personal jurisdiction despite the long relationship contemplated in the contract. Indeed, the parties' deliberate decision to include a provision specifying that New York law would govern the contract calls attention to the fact that they chose *not* to include any venue or jurisdictional provisions.

**C. Contract Performance: Questrade purposefully directed its activities at Pennsylvania by communicating with, and making payments to, Financial's headquarters there.**

During the life of the contract, Questrade made payments to and engaged in communications with Financial's headquarters in Pennsylvania. Payment and communications into a forum state pursuant to a contract support a finding of personal jurisdiction. *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 691 (3d Cir. 1990). In *North Penn Gas*, for example, the defendant made monthly payments to a gas company in Pennsylvania pursuant to a one-year contract. *Id.* at 689. The court found sufficient minimum contacts because both payment and communications into Pennsylvania reflected the defendant's intention to fulfill its contractual obligations. *Id.* at 691.

Similarly, in a dispute between business partners, the *Streamline* court considered consistent electronic communications and at least ten payments made into plaintiff's Pennsylvania bank account. Taken together, these circumstances supported a finding of sufficient minimum contacts. *Streamline Bus. Servs.*, 2014 WL 4209550, at *10; *see also Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 780 (E.D. Pa. 2012) (finding specific personal jurisdiction existed in a breach of contract claim based on the parties' "substantial communication" and payment to plaintiff's Philadelphia office, even though the nonresident defendant never visited the forum state); *Vetrotex*, 75 F.3d at 152–53 (finding no personal jurisdiction and distinguishing cases in which the defendant "sent any payments to the plaintiff in the forum state" or "engaged in extensive post-sale contacts with the plaintiff in the forum state") (citations omitted).

Here, Questrade made payments to and engaged in communications with Financial's headquarters in Pennsylvania during the five-year life of the contract. Questrade not only made multiple payments on invoices issued from Pennsylvania, but also made those payments to a

Pennsylvania bank. Oppo. Mot. Dismiss, Ex. 1, Decl. ¶ 10. Questrade also continued to communicate by directing correspondence to Pennsylvania in seeking to modify the termination provisions of the agreement itself. *Cf. Vetrotex*, 75 F.3d 147 at 152–53.

Questrade argues that the location of the alleged breach — its failure to pay the disputed sums — militates against a finding of personal jurisdiction because Questrade decided not to pay the sums in Canada. But the only case Questrade cites for the proposition that the location of a failure to pay is legally relevant concerned venue, not personal jurisdiction. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994). Indeed, to the extent that the location of nonpayment is relevant to personal jurisdiction, courts have looked not to the location of the *remission*, but to the location of the resulting *injury*. *See, e.g.*, *N. Penn Gas*, 897 F.2d at 690 ("North Penn also avers that it has suffered economic injury within Pennsylvania as a result of Corning's breach. Thus the existence of the Storage Agreement, whereby Corning made consecutive payments to North Penn *into* Pennsylvania . . . indicates sufficient minimum contacts by Corning with Pennsylvania to establish personal jurisdiction."). Because Financial was injured in Pennsylvania, any consideration of the location of the alleged breach actually works against Questrade's position.

**II. Requirement Two: This litigation "arises out of or relates to" Questrade's activities in Pennsylvania.**

Turning to the second requirement of specific personal jurisdiction in contract cases, this litigation "arose out of" Questrade's activities directed at Pennsylvania. For specific jurisdiction to exist, a plaintiff's claim must be related to, or arise out of, a defendant's contacts with the forum state. *E.g.*, *Element Fin. Corp.*, 52 F. Supp. 3d at 743. For contract claims, the Third Circuit Court of Appeals interprets this requirement to mean "substantial relevance" — in other words, "courts should inquire whether the defendant's contacts with the forum were instrumental

in either the formation of the contract or its breach." *O'Connor*, 496 F.3d at 320 (quoting *Gen. Elec. Co.*, 270 F.3d at 150).

This case would not have arisen without Questrade's communications to Pennsylvania in negotiating and entering into the contract. The duty to make scheduled payments into Pennsylvania was an express term of the contract. Financial brought this case to protect its rights under a contract that was formed because of Questrade's contacts with Pennsylvania and allegedly breached when Questrade stopped making payments into Pennsylvania.

**III.     Requirement Three:  Exercising personal jurisdiction over Questrade comports with traditional notions of fair play and substantial justice.**

If the first two requirements of specific personal jurisdiction are met — that is, if (1) the defendant purposefully directed its activities at the forum and (2) the litigation arose out of those activities — then a court will not find jurisdiction only if litigation in the forum would be unreasonable and unfair. *O'Connor*, 496 F.3d at 324–25. In making this determination, courts consider several factors: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Mellon Bank*, 960 F.2d at 1222 (quoting *Burger King*, 471 U.S. at 477). When minimum contacts exist, due process requires only a reasonable forum. *O'Connor*, 496 F.3d at 324.

What is more, the interests of the plaintiff and the forum can justify even serious burdens on the defendant once minimum contacts are established. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987). In *O'Connor*, for instance, our Court of Appeals found that jurisdiction in Pennsylvania was consistent with fair play despite several countervailing considerations: the defendant and most witnesses were in Barbados and Pennsylvania law

15

arguably did not apply. *O'Connor*, 496 F.3d at 325. As the court explained, the interests of the Pennsylvania plaintiffs carried the day: "Pennsylvania has a 'manifest interest in providing effective means of redress' when a foreign corporation reaches into the state and solicits its citizens." *Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

Here, it is reasonable to litigate this dispute in Pennsylvania. Financial is a citizen of Pennsylvania. Minimum contacts have been established. Pennsylvania's interest in providing redress to an injured citizen of the Commonwealth is a strong enough consideration that exercising personal jurisdiction comports with traditional notions of fair play and substantial justice.

## CONCLUSION

For the foregoing reasons, Questrade's motion to dismiss is denied. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE